22-1341-cr
United States v. Lin

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of December, two thousand twenty-three.

PRESENT:  DENNIS JACOBS,
          RAYMOND J. LOHIER, JR.,
          WILLIAM J. NARDINI,
               *Circuit Judges.*

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

          *Appellee,*

     v.                                                  No. 22-1341-cr

XING LIN, AKA SEALED
DEFENDANT 1, AKA DING PA,

          *Defendant-Appellant.**

-----------------------------------------------------------------

---

* The Clerk of Court is directed to amend the caption as set forth above.

FOR DEFENDANT-APPELLANT: Megan Wolfe Benett, Kreindler & Kreindler LLP, New York, NY

FOR APPELLEE: Andrew Rohrbach, Stephen J. Ritchin, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Sidney H. Stein, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Defendant Xing Lin appeals from a June 9, 2022 amended judgment of the United States District Court for the Southern District of New York (Stein, *J.*) sentencing him principally to 330 months' imprisonment. On appeal, Lin challenges his sentence as procedurally and substantively unreasonable. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

In the 1990s and early 2000s Lin led a criminal organization that operated in the Chinatown sections of Manhattan, Atlanta, and Toronto. Among other things, Lin's organization ran illegal gambling parlors and extorted rival

business owners.  On July 30, 2004, at a karaoke bar in Queens, New York, Lin ordered his bodyguard to shoot Chan Qin Zhou, a rival businessman who was interfering with Lin's extortion business.  As instructed, Lin's bodyguard shot and killed Zhou.  He also shot two waitresses, one of whom died.

As relevant to this appeal, following a two-week jury trial in April 2013, Lin was convicted of racketeering, conspiracy to commit racketeering, and extortion,[1] and originally received a sentence of life imprisonment.  After multiple appeals, the District Court ultimately resentenced him to 330 months' imprisonment.

## I.    Procedural Reasonableness

On appeal, Lin challenges the procedural reasonableness of his sentence. "This Court reviews a district court's application of the Guidelines *de novo*, while factual determinations underlying a district court's Guidelines calculation are reviewed for clear error." *United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015). For sentencing purposes, Lin's convictions are grouped into three categories. *See*

---

[1] Lin was also convicted of murder through the use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(j), but we vacated that conviction because *United States v. Davis*, 139 S. Ct. 2319 (2019), held that 18 U.S.C. § 924(c)(3)(B), which defines "crime of violence," is unconstitutionally vague. *United States v. Lin*, 792 F. App'x 139, 139 (2d Cir. 2020) (summary order).

U.S.S.G. § 3D1.1. Group One covers the racketeering conspiracy and the underlying racketeering acts of murder and conspiracy to commit murder. Group Two contains the racketeering conspiracy, extortion, and attempted extortion. Group Three comprises the gambling offenses. Adopting the Probation Department's calculations, the District Court applied the first-degree murder Guideline for Groups One and Two, which resulted in an offense level of 47 for each group; the offense level for Group Three was 23. The total offense level was 43, the highest Guidelines level. *See id.* § 3D1.4.

Lin contends that the District Court committed three procedural errors in its Guidelines calculation.

First, Lin argues that the District Court should have applied the Guideline for second-degree murder to his Group One offenses, which include racketeering acts charged as second-degree murder under New York state law. *See* App'x 108; N.Y. Penal Law § 125.25. To calculate the applicable Guideline for a racketeering conviction based on state-law predicates, the sentencing court must use "the offense level corresponding to the most analogous federal offense." U.S.S.G. § 2E1.1, Application Note 2. Lin claims that federal second-degree murder is the most analogous offense. The key element separating federal first-degree murder

4

from second-degree murder is premeditation, *see* 18 U.S.C. § 1111(a) (defining first-degree murder as "willful, deliberate, malicious, and premeditated killing"); *United States v. Capers*, 20 F.4th 105, 129–30 (2d Cir. 2021), which requires that the defendant "reflect at least for a short period of time before his act of killing," *United States v. Mulder*, 273 F.3d 91, 117 (2d Cir. 2001). The Government, Lin insists, never adduced evidence of premeditation at trial and argued that it need only prove second-degree murder for the jury to convict on the now-vacated federal murder count.

We disagree and conclude that the Government showed that Zhou's murder was premeditated by adducing evidence that Lin threatened to harm Zhou for interfering with his extortion business two months before ordering Zhou's murder. We have held that first-degree murder was the most analogous federal offense to racketeering acts charged under New York's second-degree murder statute based on similar facts. *See, e.g.*, *United States v. Carr*, 424 F.3d 213, 217, 231 (2d Cir. 2005) (finding sufficient evidence of premeditation where the defendant and his co-conspirators saw their victim drive by, retrieved weapons, and pulled the victim out of his car, and then the defendant shot him); *Mulder*, 273 F.3d at 117 (noting that "threats made before the killing are relevant to a

5

finding of premeditation" and finding sufficient evidence of premeditation where the defendant admitted he was motivated to kill the victim, a member of a rival union, to prevent the victim from returning to the job site). We accordingly reject Lin's argument that the District Court erred in applying the first-degree murder Guideline to his Group One offenses.

Next, Lin argues that the District Court should not have applied the first-degree murder Guideline to his Group Two offenses, which involve Hobbs Act extortion. The statutory maximum sentence for Hobbs Act extortion is twenty years, 18 U.S.C. § 1951(a), but the applicable Guideline provides that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 . . . , apply § 2A1.1 (First Degree Murder)," U.S.S.G. § 2B3.2(c)(1), which yields an offense level that corresponds to a life sentence, *id.* Ch. 5 Pt. A. Lin asserts that applying the first-degree murder Guideline to extortion offenses runs afoul of sentencing policy because it allows application of a Guidelines range (life) that exceeds the statutory maximum (twenty years) for the underlying offenses. This argument misconstrues the structure of the Guidelines in three ways. First, it fails to recognize that all counts of conviction must be considered in the aggregate — here, through a grouping analysis — to arrive at a

total offense level. Second, it is only after aggregating the defendant's offenses and relevant conduct that the court compares the advisory sentencing range (here, life in prison) to the aggregate statutory maximum sentences for all counts of conviction (here, life in prison for Counts One and Two, racketeering and racketeering conspiracy, and twenty years for Count Four, Hobbs Act extortion). Third, at this last stage U.S.S.G. § 5G1.2 reconciles any discrepancy between the Guidelines range and the aggregate statutory maxima by calling for the court to set the final Guidelines range at the lower of those two aggregate figures. Here, of course, Lin faced a statutory maximum of life in prison, and so there was no conflict with an advisory Guidelines range of life.

Third, Lin maintains that the District Court erred in refusing to grant a two-level reduction for acceptance of responsibility based on Lin's unsuccessful attempt to plead guilty. *See* U.S.S.G. § 3E1.1(a). Whether Lin demonstrated acceptance of responsibility is a "factual question on which we defer to the district court unless its refusal to accord such consideration is without foundation." *United States v. Broxmeyer*, 699 F.3d 265, 284 (2d Cir. 2012) (quotation marks omitted). "[T]he paramount factor in determining eligibility for § 3E1.1 credit is whether the defendant truthfully admits the conduct

7

comprising the offense or offenses of conviction." *United States v. Kumar*, 617

F.3d 612, 637 (2d Cir. 2010) (quotation marks omitted). Here, during his

allocution, Lin minimized his criminal conduct and obscured the fact that he told

his bodyguard to shoot Zhou. *See* App'x 84–85, 88, 92; *see also id.* 66, 152. Thus,

even if Lin's allocution satisfied the elements of the offense charged, he did not

"truthfully admit[]" his conduct. *Kumar*, 617 F.3d at 636 (affirming the district

court's denial of acceptance-of-responsibility credit where the defendant's

allocution "muted the gravity" of his criminal conduct (quotation marks

omitted)). Moreover, Lin ultimately chose not to enter a guilty plea and, in doing

so, put the Government to its burden at trial. *See* U.S.S.G. § 3E1.1, Application

Note 2. Finally, Lin fled the country after the murders and did not return until

he was extradited, further undermining his contention that he accepted

responsibility for his actions. We therefore conclude that the District Court did

not err in refusing to reduce Lin's sentence to reflect acceptance of responsibility.

## II.    Substantive Reasonableness

We also reject Lin's argument that his 330-month, below-Guidelines

sentence is substantively unreasonable. "[O]ur review of a sentence for

substantive reasonableness is particularly deferential, and we will set aside only

those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (quotation marks omitted). The District Court properly considered the nature and severity of Lin's offense conduct, which included two murders, as well as the mitigating factors his counsel presented and the fact that he will face deportation, in fashioning a below-Guidelines sentence. *See Broxmeyer*, 699 F.3d at 289. We therefore cannot conclude that Lin's sentence is "unsupportable as a matter of law." *Muzio*, 966 F.3d at 64. Accordingly, the sentence the District Court imposed is not substantively unreasonable.

We have considered Lin's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9